POLK *v.* GUNTHER.

(*Jackson.*    April 20, 1901.)

1. VENDOR'S LIEN. *Enforcement of, against life tenant does not affect remainderman.*

The enforcement of a vendor's lien, to which the entire title is subject, by sale of land in a suit to which the life tenant alone is made a party, does not affect the interest of the remainderman. (*Post, pp. 17–20.*)

2. SAME. *Same.*

And, in such case, the remaindermen, whose interests were not sold, will not be required, as a condition to recovery of same after the expiration of the life estate, to account for any part of the purchase price that was appropriated to the extinguishment of the vendor's lien. (*Post, p. 21.*)

3. ESTOPPEL. *To set up title to land.*

The owner of land who actively induces its purchase as the property of another will be estopped to set up his title against such purchaser, although the owner may have acted in ignorance or forgetfulness of his own title. (*Post, pp. 20, 21.*)

4. PARTITION. *Improvements made by one tenant in common.*

When one tenant in common, at his own expense, puts improvements on the common property, and, afterwards, partition in kind is made, such improvements should be allotted to the share of the party making them, and without any charge for their value. (*Post, pp. 21, 22.*)

Cases cited: Reeves *v.* Reeves, 11 Heis., 669; Estell *v.* University, 12 Lea, 476; Simpson *v.* Sparkman, 12 Lea, 360; Broyles *v.* Waddell, 11 Heis., 32.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.    F. H. HEISKELL, Ch.

Polk *v.* Gunther.

FINLAY & FINLAY for Polk.

HANCOCK & POSTON for Gunther.

WILKES, J. This is a bill to have the rights of the parties declared in a tract of $4\frac{1}{2}$ acres of land lying in the suburbs of Memphis, and to have the same partitioned. The land originally belonged to Mary F. McNutt. She conveyed it in 1867 to Martha A. Polk and her son, James K. Polk, as tenants in common, reserving a lien for unpaid purchase money. By a provision in the deed the one-half interest of Martha A. Polk is conveyed to her as her sole and separate property for and during her natural life, and at her death the same is to descend to and vest in her children then living, and in the heirs of any who may be dead, such heirs taking the interest which their father or mother would have taken if living.

Mrs. Polk died April 13, 1899, leaving four children and four grandchildren, the latter being children of her son, Jno. R. Polk, who died before his mother.

These children and grandchildren claim the share which was deeded to their mother, upon the theory that the interest vested in them under the terms of the deed, at the time it was executed, had never been divested out of them by the proceedings hereinafter referred to.

23 P—3

The purchase money not all having been paid
by Martha A. Polk and her son, James K. Polk,
the land was sold to enforce the vendor's lien,
when Merriweather, who had in the meantime
married Miss McNutt, the original vendor, became
the purchaser at less than the balance of pur-
chase money. It appears that in the decree con-
firming the sale, this deficit was by some sort
of an agreement satisfied.

Mrs. Merriweather and her husband afterwards
conveyed the lot in fee simple, but by a quit-
claim conveyance, to Mrs. Martha A. Polk. This
was in 1871.

On April 12, 1882, Mrs. Polk conveyed the en-
tire tract by warranty deed to the defendant,
Laura O. Gunther. She and her husband put
improvements upon one of the lots and sold it
to J. A. Taylor, who is in possession. Upon the
hearing the Chancellor gave decree in favor of
the complainant for the interest claimed by them,
except H. C. Polk, whom he held estopped to
claim any share by acts *in pais* in procuring
his mother to make the sale and warranty deed
to defendants.

He refused to require the successful complain-
ants to pay their proportionate parts of the orig-
inal purchase money satisfied by the foreclosure
sale.

He released the lot and improvements sold to
Taylor from all claims of the parties to this

cause, but directed the value of the lot without improvements to be charged against the share of Mrs. Gunther in the partition, and taxed the costs one-fifth against H. C. Polk and four-fifths against Gunther and wife.

H. C. Polk appealed from so much of the decree as adjudged him estopped to claims his one-twelfth interest in the land, and failed to adjudge him the owner thereof and adjudged costs against him. The complainants in the original bill appealed from so much of the decree as adjudicated that Laura O. Gunther should not be charged with the improvements on the Taylor lot, and Gunther and wife from so much of the decree as gave any of the complainants any interest in the lot. All parties have assigned errors, and they will be disposed of in inverse order in which they are named.

We are of opinion that under the deed from Miss McNutt to Mrs. Polk and her son, Mrs. Polk took a life interest in one-half of the land as her separate estate, with remainder to such of her children as might be living at her death, and the descendants of such as might then be dead, the descendants taking the share the parents would have taken, if living.

It is not necessary to decide whether the remainder vested at the time the deed was made, or at the time when the life estate fell in—that is, it is not necessary to determine whether it

was a vested or contingent remainder, for in either case it was necessary that the children (who were *in esse*) of Mrs. Polk at the time should be made defendants to the bill in order to sell the entire land, even though such sale may have been under judicial proceedings to collect the purchase money.

If they were not made parties, the only effect of the decree was to divest the title of such persons as were made parties, and the purchaser only obtained the share and interest of the persons who were made parties, and not those in remainder who were not made parties.

The only title, therefore, which the purchaser obtained under the foreclosure proceeding was the undivided half interest of J. K. Polk and the life estate of Mrs. Martha A. Polk in the other undivided half interest.

We are of opinion that, under the facts developed in this record, H. C. Polk is estopped to set up any claims to a share as against the defendants. He negotiated a sale of this property for his mother to the defendants, and in the negotiations represented to them that his mother owned the property, and had a good title to it, and would make them a good title. He caused the deed to be prepared conveying the property to them in fee, with covenant of warranty, and was active in consummating the trade with defendants upon his assurance and their belief based

Polk *v.* Gunther.

thereon that they were obtaining a good and perfect title.

It does not matter that he did not know as a matter of fact, and have it in his mind, that he was entitled, with his brothers and sisters, to a share in the land. He had constructive notice of the fact, and must be held to have waived all claim in favor of the parties misled by his assurances.

It is said that it was error not to charge complainants with a proportionate part of the original purchase money paid off by the sale under the foreclosure proceedings.

This contention would probably be correct if the interest of the remaindermen in the half interest of their mother had been sold; but under the view we take of the case, only the interest of the mother as life tenant was sold, together with J. K. Polk's half interest, and this was what the purchaser paid for, and he paid for nothing else, and secured or received nothing else, and the interests of the remaindermen were not affected by the proceeding.

There was no error in directing that in the partition of the lot the improvements upon the Taylor lot should not be estimated or charged up to defendants, but the lot should be.

When one tenant in common, at his own expense, puts improvements on the common property, and afterwards partition in kind is made, such

improvements should be allotted to the share of the party making them, and without any charge for their value. *Reeves* v. *Reeves,* 11 Heis., 669; *Estell* v. *University,* 12 Lea. 476; *Simpson* v. *Sparkman,* 12 Lea, 360; *Broyles* v. *Waddell,* 11 Heis., 32-42; *Nelson* v. *Clay,* 23 Am. Dec., 387.

The case of *Broyles* v. *Waddell* is strictly in point.

We are of opinion the decree of the Chancellor is correct, and it is affirmed. The costs of appeal will be equally divided between the complainants and defendants. The costs of the Court below will remain as adjudged by the Chancellor.